*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA, fka The Travelers Indemnity
Company of Illinois; TRAVELERS CASUALTY
& SURETY COMPANY, fka The Aetna
Casualty & Surety Company,
     *Plaintiffs-Appellees/Cross-Appellants,*

     *v.*

HILLERICH & BRADSBY COMPANY, INC.,
     *Defendant-Appellant/Cross-Appellee.*

Nos. 09-5113/5136

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00533—John G. Heyburn II, District Judge.

Argued: January 20, 2010

Decided and Filed: March 12, 2010

Before: SILER, MOORE, and CLAY, Circuit Judges.

—————————————

## COUNSEL

—————————————

**ARGUED:** Merrill S. Schell, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky,
for Appellant. Robert G. Kamenec, PLUNKETT COONEY, Bloomfield Hills, Michigan,
for Appellees. **ON BRIEF:** Merrill S. Schell, WYATT, TARRANT & COMBS, LLP,
Louisville, Kentucky, for Appellant. Robert G. Kamenec, PLUNKETT COONEY,
Bloomfield Hills, Michigan, James R. Lilly, PLUNKETT COONEY, Detroit, Michigan, for
Appellees.

—————————————

## OPINION

—————————————

CLAY, Circuit Judge. Plaintiffs, Travelers Property Casualty Company of America
and Travelers Casualty & Surety Company (together "Travelers"), and Defendant, Hillerich
& Bradsby Co., Inc. ("Hillerich") cross-appeal a series of orders entered by the United States

District Court for the Western District of Kentucky resolving cross-motions for summary judgment. First, the district court ruled that Travelers has a right to seek reimbursement for settlement costs paid in the underlying litigation and that the underlying litigation did not include a disparagement claim at the time of settlement. The district court also ruled that Travelers' duty to defend Hillerich began with the First Amended Complaint filed on November 8, 1999. Pre-judgment interest was awarded to Travelers at 8% simple interest and no pre-judgment interest was awarded to Hillerich. For the reasons set forth below, we conclude the district court's orders should be **AFFIRMED** in their entirety.

## I.

### A.      Procedural History

This dispute began with a different litigation involving Baum Research and Development Co., Inc. ("Baum"), and Hillerich. That litigation (the "*Baum* Litigation") involved several claims alleging antitrust violations and tortious interference with contract and with other business relations. Hillerich was one of several defendants in that case, *Baum Research and Development Co., Inc. v. Hillerich & Bradsby Co., et al.*, No. 98-72946 (E.D. Mich.). Hillerich sought insurance coverage and defense assistance from Plaintiff, Travelers, for the *Baum* Litigation. Travelers initially denied coverage and refused to defend Hillerich, but after a Second Amended Complaint was filed by Baum, Travelers began providing a defense to Hillerich.

At the conclusion of the plaintiff's case in the *Baum* litigation, a settlement was negotiated. Travelers requested that Hillerich agree to a right of reimbursement for any settlement funds that were later determined to cover claims that would not fall under Travelers' insurance coverage, which Hillerich refused. Travelers contributed Hillerich's funds to the settlement anyway, and then filed this action initially in the Eastern District of Michigan. The case was transferred upon motion of Hillerich to the Western District of Kentucky.

In this litigation, Travelers sought reimbursement for their settlement contribution which necessitated a ruling that the settlement did not include a "disparagement" claim that would have been covered by the insurance policy. Hillerich counterclaimed for defense

costs from the start of the *Baum* Litigation, arguing Travelers breached its duty to defend from the inception of the lawsuit.

On cross-motions for summary judgment, the district court made the following rulings in several separate orders as the litigation progressed:  1) Travelers could seek reimbursement despite no express consent from Hillerich; 2) The *Baum* Litigation settlement did not include a "disparagement" claim and so Travelers was entitled to reimbursement; 3) Travelers breached its duty to defend because it should have entered the litigation upon the November 8, 1999 filing of Baum's First Amended Complaint; 4) Travelers is entitled to simple pre-judgment interest for the reimbursement funds while Hillerich is entitled to no pre-judgment interest for its defense costs.  Both parties timely appealed these rulings.

### B.     Factual History

#### 1.     The *Baum* Litigation

The *Baum* litigation was originally filed on July 11, 1998 in the Eastern District of Michigan alleging that Hillerich and several other defendants had engaged in antitrust violations, tortious interference with contract, and tortious interference with prospective advantage.  Hillerich points to allegations related to the final claim in which Baum alleges that defendants engaged in a conspiracy to "misrepresent information . . . that related to the accuracy of the Baum Hitting Machine or the characteristics of the Baum Bat." (Dist. Ct. Doc. No. 59, Ex. A, Baum Compl. ¶ 141).  Upon a motion to dismiss filed by all defendants, the district court ruled on November 19, 1998 to dismiss the antitrust claims and to grant leave to amend to Baum regarding the remaining claims.  Baum filed a motion for reconsideration on December 4, 1998 to which it attached as an exhibit "Plaintiff's First Amended Complaint" containing amended versions of the tortious interference with prospective advantage claim and the dismissed antitrust claims.

The judicial panel on multidistrict litigation transferred the *Baum* litigation to the District of Kansas on December 9, 1998 and that court denied Baum's motion for reconsideration as to the antitrust claims on October 29, 1999.  Baum then filed its First Amended Complaint containing only the tortious interference with prospective advantage claim on November 8, 1999.  That claim included the following allegations:

> Recently Easton [another Defendant] . . . has embarked on a program to falsely disparage the effectiveness of the Baum Testing Machine in correspondence to college coaches and institutions . . . . These acts perpetuated the consequences caused by the conspiracy.
> . . . .
> Defendants . . . interfered with Baum's business opportunity and expectancy and with Baum's efforts to market the Baum Bat and license use of the Baum Hitting Machine by unethically, unlawfully, fraudulently, and with legal malice, intentionally committing the following acts: . . . .
>> Easton falsely described the results of tests performed on the Baum Hitting Machine . . . and broadcast handwritten notes and typed materials containing false descriptions of these tests to the NCAA Baseball Rules Committee and to a large number of college and high school baseball coaches . . . .
> As a direct and proximate result of [Defendants'] interference with Baum Research's business relationships and prospective economic advantage, through improper means including but not limited to fraudulent misrepresentations, Baum Research has been damaged . . . .

(Dist. Co. Doc. No. 59, Ex. B, Baum First Am. Compl. ¶¶ 71, 78-79).

The case was then transferred back to the Eastern District of Michigan. Baum sought and was granted leave to further amend its complaint and filed a Second Amended Complaint on January 9, 2001. This complaint included the language regarding the tortious interference claim alleging fraudulent misrepresentation of information, specifically using the words "falsely disparage" in reference to the defendants' actions. (Dist. Ct. Doc. No. 58, Ex. A, Baum Second Am. Compl. ¶ 51).

Ultimately the *Baum* litigation proceeded to trial, which continued into 2005. Settlement negotiations were ongoing throughout trial, and on March 18, 2005 the parties settled after the close of Baum's case-in-chief. Hillerich's portion of the settlement was $500,000.

###     2.     The Relationship Between Travelers and Hillerich

At all relevant times, Hillerich had insurance through Travelers under several Commercial General Liability policies. The claims in the *Baum* litigation potentially invoked coverage under Coverage B, Personal and Advertising Injury Liability. The policy covers personal injury "caused by an offense arising out of your business, excluding

advertising, publishing, broadcasting or telecasting done by or for you" and advertising injury "caused by an offense committed in the course of advertising your goods, products or services." (Dist. Ct. Doc. No. 58, Ex. C, Ins. Contract, 4). The covered offenses include "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Id. at 9-10). The policy also has a falsity exclusion whereby such offenses done by the insured with the knowledge of the information's falsity were not covered.

Travelers initially notified Hillerich that it was declining coverage based on its review of the original *Baum* Litigation complaint due to a lack of a specific enumerated offense and a lack of any claimed personal or advertising injury. This notification was on September 7, 2000 though Hillerich had notified Travelers of the litigation on March 19, 1999 by providing the December 4, 1998 draft First Amended Complaint. Hillerich did not tender the First Amended Complaint, which was filed on November 8, 1999, to Travelers until December 22, 2000. The record does not reveal when Travelers learned of the Second Amended Complaint. However, upon review of the second amended complaint, Travelers notified Hillerich on May 21, 2001 that it would fund Hillerich's defense from January 9, 2001 (the filing date of the Second Amended Complaint), noting that this version of the complaint used the term "disparage." Travelers noted that it was still reviewing whether the litigation involved a covered claim, stating in its letter that Hillerich's defenses costs would be funded "until such time that the availability of coverage could be more definitively determined." (Dist. Ct. Doc. No. 42, Ex. B, 1-2, 19). In a September 21, 2001 letter, Travelers reiterated its position that it

> reserves any and all rights to contest coverage at a later date and expressly does not waive coverage defenses, whether set forth herein, in the insurance contract or otherwise. Should the situation arise where Travelers elects to invoke these rights, it would not be seeking reimbursement for *defense costs* that it had previously paid.

(Id., Ex. C, Letter from Pl., 2) (emphasis added). Throughout the trial and settlement negotiations, Travelers objected to the billing structure of Hillerich's defense counsel and repeatedly told Hillerich that it would only reimburse reasonable defense costs. Hillerich retained its chosen defense counsel though Travelers was paying the defense costs.

Travelers informed Hillerich that it would only fund settlement costs while reserving a right to seek reimbursement for any contribution found to be funding noncovered claims. One such communication including the following:

> Travelers is willing to contribute $250,000 to the underlying settlement while reserving all available coverage defenses for defense and indemnity exposures. [Hillerich] would similarly preserve its coverage claims. . . . [Hillerich] informed [Travelers] that, even if Travelers were willing to contribute to the underlying settlement and waive any right of reimbursement should coverage be found to be lacking, [Hillerich] would not be willing to similarly waive its right to "pre-acceptance" fees. . . . If [Hillerich] is able to reach a settlement . . . in excess of $250,000, that is nonetheless reasonable, the ultimate allocation of the settlement between [Hillerich] and Travelers could be preserved for future litigation or other resolution.

(Id., Ex. K, Email from Pl.).

Hillerich refused this condition on settlement funds, arguing that Travelers had waived its right to reimbursement of defense costs and that coverage extended to both defense and settlement costs anyway. Travelers continued to request that Hillerich identify the allocation of any settlement costs into covered and non-covered claims, and notified Hillerich that it was unlikely any indemnity or defense coverage would be afforded as the litigation developed.

Hillerich acknowledged Travelers' claim of a right to seek reimbursement but expressly objected to this right, instead arguing that the claims at issue in the *Baum* litigation should be covered by Travelers. Hillerich demanded that Travelers settle the case while still refusing to recognize a right to reimbursement, which Travelers again invoked as a condition for funding settlement. Hillerich threatened to sue Travelers for bad faith for defending under a reservation of rights if Travelers did not settle the underlying litigation. Travelers again invoked its reservation of rights to seek reimbursement for noncovered claims included in the settlement while it funded the settlement on March 18, 2005. Travelers initiated the instant case in district court on April 18, 2005. After a series of orders, a final judgment was entered by the district court on December 19, 2008. This timely appeal followed.

**II.**

The district court's grant of summary judgment is reviewed *de novo.  Briscoe v. Preferred Health Plan, Inc.*, 578 F.3d 481, 484 (6th Cir. 2009).  Cross motions for summary judgment require the court to "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 917 (6th Cir. 2004) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)).  Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact" regarding any essential element of the non-moving party's case and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party has satisfied its burden, the non-moving party bears the burden to show that the record reflects a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "When no genuine issues of material fact exist, this Court reviews *de novo* the district court's conclusions of substantive law." *Gass v. Marriot Hotel Servs., Inc.*, 558 F.3d 419, 428 (6th Cir. 2009) (citing *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004)).  A court sitting in diversity applies the law of the forum state and, in the absence of direct state court precedent, must make its best prediction as to how the highest state court would resolve the issues presented. *Stalbosky v. Belew*, 205 F.3d 890, 893-94 (6th Cir. 2000).

A district court's decision whether to award pre-judgment interest on unliquidated damages and whether to award simple or compound pre-judgment interest for all damages is within its discretion under Kentucky law, and so is reviewed for abuse of discretion. *See Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 633 (6th Cir. 2000); *Reliable Mechanical, Inc. v. Naylor Indus. Services, Inc.*, 125 S.W.3d 856, 858 (Ky. Ct. App. 2003) (Kentucky law typically awards simple interest, but compound interest is also allowed in the court's discretion).

## A.    Travelers' Right to Seek Reimbursement

Kentucky has not specifically spoken on the issue presented in this case, which is whether Travelers can seek reimbursement of settlement for noncovered claims when it funded the settlement under a reservation of rights, when Hillerich was given notice of its intent to seek reimbursement, and when Hillerich retained meaningful control of the defense and negotiation process. In particular, Kentucky has not addressed whether an insurer can unilaterally reserve a right to reimbursement over the objection of the insured.

There are several principles of Kentucky contract law that guide our determination of how Kentucky would rule on this question. Kentucky, like most jurisdictions, has a longstanding preference for encouraging fair and reasonable settlement of lawsuits. *See Dexter v. Duncan*, 265 S.W. 832, 832 (Ky. 1924). An insurance company can defend an insured under an express reservation of rights. *See Aetna Cas. & Sur. Co. v. Com. of Ky.*, 179 S.W.3d 830, 841 (Ky. 2005) ("If the insurer believes there is no coverage, it has several options. One is to defend the claim anyway, while preserving by a reservation of rights letter its right to challenge the coverage at a later date."); *see also Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906*, 276 S.W.3d 298, 300 (Ky. Ct. App. 2009) (allowing an insurance company to defend under a reservation of rights and to file a separate suit determining extent of coverage). Finally, Kentucky imposes a broad duty to defend on insurers, in which insurers can be held to have acted in bad faith for refusing to defend or for defending improperly. *See Aetna Cas. & Sur. Co.*, 179 S.W.3d at 841 ( "insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy") (citing *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)); *Eskridge v. Educator & Executive Insurers*, *Inc.*, 677 S.W.2d 887, 889 (Ky. 1984) (insurer liable in bad faith action for all damages flowing from refusal to defend based on mistaken, though good faith, belief that coverage did not extend to claim).

The majority of jurisdictions that have addressed the issue of whether an insurer defending under a reservation of rights can seek reimbursement funds expended on noncovered claims have found that when there is an implied-in-fact or implied-in-law contract, the insurer can seek reimbursement. *Nobel Ins. Co. v. Austin Powder Co.*, 256 F.

Supp. 2d 937, 940 (W.D. Ark. 2003) (insurer must expressly include reimbursement in reservation of rights letter to reserve that right); *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir. 2002) (applying Ohio law) (allowing insurer to recoup defense costs under an implied-in-fact contract theory); *Blue Ridge Ins. Co. v. Jacobsen*, 22 P.3d 313 (Cal. 2001) (finding implied-in-law contract); *Medical Malpractice Joint Underwriting Ass'n of Massachusetts v. Goldberg*, 680 N.E.2d 1121 (Mass. 1997) (refusing right of reimbursement because insurer failed to notify insured of settlement offer but following majority rule generally). However, some jurisdictions have held otherwise either based on a theory that consent of the insured is necessary and cannot be implied when the insured argues the claims are covered, *Excess Underwriters at Lloyd's, London, et al. v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 48-50 (Tex. 2008), or based on the theory that the insurer is a volunteer payor if it pays defense or settlement costs while attempting to reserve rights over the insured's objection, *Mount Airy Ins. Co. v. Doe Law Firm*, 668 So.2d 534, 538-39 (Ala. 1995).

Travelers relies heavily on two cases, *Blue Ridge* and *SST Fitness*, to support its theory that Kentucky would follow the majority rule and would allow reimbursement of settlement funds in this case. Hillerich relies heavily on *Frank's Casing* to argue that Kentucky would likely follow this more recent, high-profile case from Texas. Hillerich also highlights the dissent in *SST Fitness*, which uses a similar analysis to *Frank's Casing*, and which relies on much of the same caselaw from Texas. However, since Kentucky law on an insurer's use of a reservation of rights letter does not appear to require an agreement from the insured, this Court concludes that Kentucky would follow the majority rule. This case is also distinguishable from *Frank's Casing* and *SST Fitness* in material ways, allaying some of the concerns expressed by the Texas Supreme Court and by the dissent in *SST Fitness*. Importantly, this case is about settlement funds, i.e., ultimately about the duty to indemnify, rather than defense costs. Furthermore, in this case Hillerich demanded the settlement under threat of a suit for bad faith while retaining meaningful control over the defense of the *Baum* litigation despite Travelers' right to settle the litigation without Hillerich's consent.

*Blue Ridge* and the majority in *SST Fitness* rely on similar theories, an implied contract, to find that the insurer was able to seek reimbursement though ultimately the cases

come to different legal conclusions as to whether the contract is implied-in-law or implied-in-fact. In *Blue Ridge*, the California Supreme Court held in response to a question certified by the Ninth Circuit that an insurer may seek reimbursement for settlement funds paid on claims later determined to be noncovered when there was

> (1) a timely and express reservation of rights; (2) an express notification to the insureds of the insurer's intent to accept a proposed settlement offer; and (3) an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement.

*Blue Ridge*, 22 P.3d at 320-21. The judgment in the case was unanimous, though there were two concurring opinions: one reiterating the insurer's duty to evaluate a settlement offer without regard to coverage, *id.* at 323, and the other discussing the insured's options when faced with a settlement for a claim where coverage is disputed, *id.* at 323-24. The court in that case found an implied-in-law contract between the parties because the policy clearly spelled out which claims were and were not covered and because under California law the insurer is required to accept a reasonable settlement offer as part of its good faith obligations. *Id.* at 321-23. The policy rationale underlying this decision was primarily based in an unjust enrichment argument and included the fact that the insured had only paid premiums for coverage of the specified claims in the policy, the insured had full knowledge of the consequences of accepting the defense and settlement under the insurer's reservation of rights, and the rule adopted encourages settlement of underlying cases where there is a dispute over coverage. *See id.*

SST Fitness relied on an implied-in-fact contract theory to allow reimbursement of defense costs when it was later determined there was no duty to defend, finding that by accepting the defense offered under a reservation of rights, the insured was implicitly agreeing to the insurer's reservation. 309 F.3d at 919-21. This Court, in predicting Ohio contract law, concluded that this rule was favorable because it promoted insurers covering defense costs in disputed coverage cases. *Id.* at 921.

The dissent in *SST Fitness*, which Hillerich cites heavily, argued that Ohio contract law would be more likely to require an express agreement to such a reservation or something more than simply silence on the part of SST. *See id.* at 923-27 (Clay, J. dissenting). Part of

the rationale of the dissent was that United National was seeking a right to reimbursement not in the insurance contract and "not a right to which it is entitled based on noncoverage under the policy." *Id.* at 925. Here, Travelers is basing its argument primarily on noncoverage under the policy.

In *Frank's Casing*, a heavily divided Texas court held that there was no implied contract for the insurer to seek reimbursement and that the insurer had no equitable right to reimbursement. 246 S.W.3d at 45-50. This holding was primarily based on its prior holding in *Texas Association of Counties County Government Risk Management Pool v. Matagorda County* in which that court held that an insurer may only seek reimbursement from the insured if it "obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement." 52 S.W.3d 128, 135 (Tex. 2000). In *Frank's Casing*, the insured consented to the settlement but not to the insurer's right to seek reimbursement, which is similar to Hillerich's position in this case. Ultimately, the Texas court ruled that there was no exception to the rule in *Matagorda County* and that an insurer needs both consent to settle and consent to seek reimbursement based on an extension of the argument that the risks of uncertainty as to coverage are better placed on the insurer than the insured. *Frank's Casing*, 246 S.W.3d at 46-48. The court then went on to reject an implied-in-fact agreement as to reimbursement given the insured's consistent stance that the claims were covered, *id.* at 49, and to reject equitable theories of reimbursement, *id.* at 50. The Texas court also noted in distinguishing *Blue Ridge* that potential bad faith liability in Texas is narrower than in California. *See id.* at 50-51.

Most jurisdictions allow for the insurer to seek reimbursement of defense costs if it is later determined that the insurer owed no duty to defend. *See SST Fitness*, 309 F.3d at 917-19 (collecting cases and concluding this is the majority rule). This case involves the much narrower duty to indemnify, which would seem to imply that those same jurisdictions would be just as likely, if not more likely, to find that an insurer can seek reimbursement for settlement costs for claims later determined to not be covered by the insurance. Travelers' duty to defend and potential liability for bad faith actions also cut in favor of allowing reimbursement for settlement funds because delaying the underlying settlement negotiations to file a declaratory judgment action regarding the coverage disputes would substantially

increase defense costs. If Travelers had simply refused to settle the case, it would not only have failed to protect itself from a potential breach of contract claim, it likely would have expressly created such a claim under its broader duty to defend. *See Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 451 (Ky. 1997) (setting forth criteria for bad faith action in cases where insurer refused to settle within policy limits).

The Kentucky courts have held, if not explicitly then by implication, that the insurer can unilaterally reserve its right to contest coverage by an explicit letter to that effect. *See Aetna Cas. & Sur.*, 179 S.W.3d at 841 ("[The insurer may] defend the claim anyway, while preserving by a reservation of rights letter its right to challenge the coverage at a later date."); *Parsley v. Ky. Farm Bureau Mut. Ins. Co.*, 32 S.W.3d 103, 104 (Ky. Ct. App. 2000) (insurer agreed to defend under reservation of rights; court did not inquire into whether insured assented to that particular condition); *Consol. Am. Ins. Co. v. Anderson*, 964 S.W.2d 811, 812 (Ky. Ct. App. 1997) (same). The fact that an insurer can unilaterally reserve the right to contest coverage for both defense and indemnification costs favors allowing reimbursement for noncovered indemnity claims especially since the duty to indemnify is separate from and narrower than the duty to defend. *James Graham Brown Found.*, 814 S.W.2d at 279-80. Kentucky has a broadly defined bad faith doctrine such that an insurer can be held liable for bad faith even when defending the insured. *Guaranty Nat'l Ins. Co. v. George*, 953 S.W.2d 946, 949 (Ky. 1997) (insurer notifying insured it is defending under a reservation is effective but does not absolve insurer of potential bad faith claim). An insurer could be held liable for damages resulting from delays arising out of its refusal to defend without an agreement from the insured that it could later seek reimbursement. *See id.*; *cf. Eskridge*, 677 S.W.2d at 889 (insurer liable for all damages flowing from breaching duty to defend). Evaluating whether an insurer's refusal to settle was in bad faith also does not take into account whether the insurer reasonably believed the settlement only included noncovered claims. *Motorists Mut. Ins. Co.*, 996 S.W.2d at 451.

Therefore, we conclude that Kentucky, like the majority of jurisdictions, will allow reimbursement for an insurer after a unilateral reservation of rights by the insurer over the objection of the insured in at least the narrow circumstances posed in this case and in cases such as *Blue Ridge*. This reimbursement right arises under an implied-in-law contract theory

to allow an insurer to seek reimbursement when "(1) the insurer has timely asserted a reservation of rights; (2) the insurer has notified the insured of its intent to seek reimbursement; and (3) the insured has meaningful control of the defense and negotiation process." *Travelers Prop. Cas. Co., et al. v. Hillerich & Bradsby Co., Inc.*, 2006 WL 2524145, at *2 (W.D. Ky. 2006).

Travelers did communicate to Hillerich that it would not be seeking reimbursement for defense costs paid, though at all times Travelers reiterated its right to contest both defense and indemnity coverage and explicitly notified Hillerich of its intent to seek reimbursement for settlement funds paid on noncovered claims. Presumably Travelers' reservation of a right to contest coverage on defense costs would have only extended to defense costs not yet paid, though there is some indication in the record that Travelers attempted to resurrect a right to seek reimbursement for defense costs. Regardless, in the instant case, Travelers does not seek any reimbursement for defense costs paid, only for settlement funds contributed to noncovered claims.

Hillerich repeatedly asked Travelers to authorize settlement and refused to contribute its own funds to any settlement reached. Hillerich and its counsel both demanded that Travelers settle the litigation and threatened to sue Travelers for bad faith if it did not. Travelers suggested to Hillerich that it participate directly in settlement talks and dispute the issue of coverage and allocation of settlement costs later. Hillerich's chosen defense counsel continued to handle the litigation and settlement negotiations, only communicating with Travelers regarding settlement authority and contribution.

Travelers was in a difficult position – either settle the claim without an agreement on reimbursement when Travelers was contesting coverage or delay settlement when that would increase defense costs that it had already waived the right to recoup and might lead to liability on a bad faith claim. Kentucky favors fair and reasonable settlements, and all parties agree that the underlying settlement was fair and reasonable. Allowing insurers to reserve a right to seek reimbursement in at least some limited circumstances where it is done expressly and where the insured retains meaningful control over the defense encourages settlements when coverage is uncertain, while not permitting unjust enrichment to the insured who demands settlement but refuses to recognize a right to reimbursement. Here the

insured was arguing that coverage was afforded for both defense and settlement costs, but refused to allow the insurer to seek reimbursement if a court later determined that the insured's position was incorrect. It would seem to be an unjust outcome for the insurer if this Court were to sanction that position. The insured would be both getting the settlement at the time it preferred and having that settlement funded by the insurer when no coverage was afforded under the policy. It is unlikely Kentucky would approve such a position.

Though it is not ultimately certain how Kentucky would rule on this issue, given the underlying policy of Kentucky law and its specific rules on reservations of rights, we conclude that Kentucky would follow the logic of *Blue Ridge* and allow Travelers to seek reimbursement.

**B.     Indemnification Coverage Offered by the Travelers' Policies**

Disparagement, or trade libel, is akin to defamation under Kentucky law. *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 872 (Ky. Ct. App. 2007). In order to prove disparagement, a plaintiff needs to show that the defendant "publishe[d] a false statement that disparages 'the quality of [plaintiff's] land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property.'" *Id.* at 873 (quoting Restatement (Second) of Torts § 626 (1977) (incorporating § 623A)).

The duty to indemnify is narrower than the duty to defend because it only arises when there is an actual basis for the insured's liability to a third party. *See James Graham Brown Found.*, 814 S.W.2d at 279-80; *see also Ky. Sch. Bd. Ins. Trust v. State Farm Mut. Ins.*, 907 F. Supp. 1036, 1038 (E.D. Ky. 1995). In order for Hillerich to be entitled to indemnification for the settlement in the first place Hillerich would have been required to show that it could have been held liable in the *Baum* litigation for a covered claim if there had not been a settlement, which includes looking beyond the pleadings to the evidence presented by Baum in its case-in-chief. *See Ky. Sch. Bd.*, 907 F. Supp. at 1037-38. The burden of proof in this summary judgment motion is on the movant, Travelers, to show that there was *not* a claim for disparagement in the litigation at the time of settlement, but this Court is still required to consider whether Baum presented any evidence beyond its pleadings

to support such a claim. Additionally, Hillerich does have some burden to show that any evidence of disparagement beyond the pleadings was presented in the *Baum* litigation that would create a genuine issue of material fact because once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts" to survive summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The question of whether disparagement was part of the *Baum* litigation at the time of settlement requires addressing two related issues: 1) whether the Second Amended Complaint alleged a claim of disparagement against Hillerich or that could have given rise to such liability on the part of Hillerich; and 2) whether at the time of settlement, which took place at the conclusion of Baum's case-in-chief, any claim of disparagement remained part of the *Baum* litigation. Travelers raises an additional argument that even if the Second Amended Complaint includes a claim for disparagement it falls within the falsity exclusion of the policy and so is not covered.

The Second Amended Complaint contains one count for tortious interference with business relationships and prospective economic advantage. The district court did not explicitly rule on whether the Second Amended Complaint actually alleges a claim of disparagement against Hillerich. Within the allegations of the complaint are several uses of the term disparage, including factual allegations that arguably constitute the elements of disparagement. Reading the complaint as a whole demonstrates that Baum alleges that a co-conspirator, Easton, engaged in a "program to falsely disparage the effectiveness of the Baum Hitting Machine" which included publishing this false information to college coaches and institutions, as well as to the NCAA, resulting in damages to Baum that were known or should have been known to be likely to occur as a result of this disparagement. (Dist. Ct. Doc. No. 58, Ex. A, ¶ 69). However, the Baum complaint also alleges that this disparagement was done with the actual knowledge of the information being false and that all of the alleged conduct was intentional on the part of the defendants. This allegation may trigger the falsity exclusion in the policy. However, Hillerich argues that since the complaint only alleges actual knowledge on the part of Easton, the falsity exclusion does not apply.

The issue of whether the falsity exclusion applies is briefed in a very cursory matter before this Court and need not be resolved in order to resolve this issue.

Assuming *arguendo* that the complaint sufficiently alleged disparagement in such a way as to not fall within the falsity exclusion, Travelers is still entitled to summary judgment on this issue. Travelers points to comments from the district court judge in the *Baum* litigation that were part of an exchange with Baum's counsel about the disparagement issue to show that this claim was no longer part of the case. That exchange took place as follows:

> THE COURT: I promised myself I would not. You have exactly one page in your brief on disparagement of the Baum Hitting Machine without a single citation to the record. I do not believe it is an issue in this case.
> MR. ROMANO [Baum's counsel]: Well, Your Honor - -
> THE COURT: No, you listen to me. You just made your argument on the machine. Disparagement of the machine or an attack on the machine is not an issue in this case. There is no tortious interference with the use of the machine by the NCAA as a testing device, now you may proceed.
> MR. ROMANO: Okay, Your Honor. I - -
> THE COURT: That's a ruling. Now, I promise not to interrupt, no, you can just continue.
> MR. ROMANO: Can I just explain one point?
> THE COURT: No, no, you cannot. I have made a ruling.
> MR. ROMANO: I understand that, Your Honor.
> THE COURT: Now, I promised I would not interrupt you, but I have made a ruling, there is no disparagement of the Baum Hitting Machine as an act of tortious interference in this case. Now, you go ahead.
> MR. ROMANO: I wasn't using it for that purpose, Your Honor.
> THE COURT: You go ahead.
> MR. ROMANO: My purpose was to show what their concern was, not the machine itself. That only goes to prove that the one thing that they never wanted was the batted-ball exit speed to become disclosed. That's why they had all these meetings to come up with a consensus test like the Brandt test because the Brandt test did not disclose the batted-ball exit speed, and they came up with that test after having a number of meetings among themselves and getting together to come up with what is a consensus test so that they would be able to avoid a test that showed batted-ball exit speed. That's the only reason I used that. I wasn't using that as being the focus of the interference, Your Honor. It really wasn't.

(Dist. Ct. Doc. No. 58, Ex. E, 59-61). The district court later issued an order denying Baum's Motion for Judgment as a Matter of Law without formally addressing whether Baum

had presented a claim for disparagement. Later still, when the same district judge was addressing a motion to transfer this case, he noted that the comments in the above exchange were not intended to be a ruling on policy coverage in the instant case, but were a ruling on the motion presented at that time in the underlying litigation. Hillerich therefore argues that the comments above are not dispositive as to whether disparagement was an issue in the underlying action. However, that argument fails to address the comments of Baum's counsel that appear to concede that the plaintiff in the underlying action was not alleging any specific act of disparagement as a part of its tortious interference allegation. The district judge's comments in the exchange constitute persuasive evidence in the record that the *Baum* litigation no longer contained an allegation of disparagement at the close of Baum's case-in-chief, if it ever did.

While the burden is on the movant at summary judgment to show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, once that burden has been met, as in this case, the non-movant must point to evidence in the record to create a genuine issue of material fact. Travelers presented evidence from the record that the underlying litigation did not contain a claim for disparagement at the time of settlement. Hillerich has failed to point to any evidence that Baum presented at trial that would have supported a claim for disparagement, and the complaint is simply not sufficient on its own to create a duty to indemnify even if this Court finds the complaint did contain an allegation of disparagement. If Baum could not hold Hillerich liable for disparagement, which it could not if no evidence was presented to support such a claim at trial, then Travelers had no duty to indemnify at the time of settlement. *See Ky. Sch. Bd.*, 907 F. Supp. at 1037-38.

The district court did not err in finding that disparagement was not part of the *Baum* litigation at the time of settlement. Even if the Second Amended Complaint sufficiently alleged a covered claim for disparagement, there is no evidence in the record that would support a conclusion that Baum had presented any evidence of disparagement at trial that could have supported a finding of liability for Hillerich. Therefore, disparagement was not an issue in the litigation at the time of settlement, and Travelers is, therefore, entitled to reimbursement of the settlement funds paid on Hillerich's behalf.

## C.      Travelers' Duty to Defend

Both parties appeal the issue of when Travelers' duty to defend began in the *Baum* litigation. Hillerich argues that Travelers should have assumed the defense from the filing of the original complaint, or in the alternative that the proper filing date of the First Amended Complaint should be construed as December 4, 1998. Travelers argues that its duty to defend did not begin until the Second Amended Complaint, or in the alternative that the district court properly used the November 8, 1999 filing date of the First Amended Complaint.

Under Kentucky law, an insurer's duty to defend the insured in an ongoing suit is triggered when "there is any allegation in the complaint which potentially, possibly or might come within the coverages of the policy." *O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390, 392 (Ky. 1984). The only claim in the *Baum* litigation that Hillerich argues could have triggered such a duty to defend is Baum's allegation that the Defendants in that action engaged in a conspiracy to disparage Baum's products. As discussed in the previous section, disparagement has a particular meaning under the Travelers policy and in Kentucky law which is akin to defamation. Therefore, the question of when Travelers' duty to defend was triggered is a question of when the *Baum* litigation first involved a claim that arguably could be seen as a claim asserted against Hillerich for defamation.

The district court concluded that the First Amended Complaint filed on November 8, 1999 alleged a potential claim of disparagement against another defendant, Easton, which was alleged as part of Baum's claims that the Big Three defendants (Hillerich, Easton, and Worth) were engaging in a conspiracy to dominate the amateur baseball bat market. Travelers disputes that its duty to defend could be triggered by a disparagement claim alleged against a co-conspirator rather than implicating Hillerich. However, civil conspiracy allegations would support holding Hillerich liable for the acts of a co-conspirator in furtherance of the conspiracy. *See Smith & Nephew, Inc. v. Federal Ins. Co.*, 113 Fed. Appx. 99, 103 (6th Cir. 2004); *see also* 15A C.J.S. *Conspiracy* § 18; Prosser & Keeton on Torts (5th ed. 1984) 323, Section 46.

Hillerich argues that the original complaint included a reference to defendants' plan to "misrepresent information" regarding the Baum Hitting Machine and the Baum Bat, which arguably constitutes a claim for disparagement. (Dist. Ct. Doc. No. 59, Ex. A ¶¶ 42-43). As the court below noted and Hillerich relies upon heavily, "disparage" is defined as "(1) to lower in rank or reputation; (2) to deprecate by indirect means (as invidious comparison): speak slightingly about." *Merriam-Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/disparage (last accessed Jan. 5, 2010). The solitary reference to a plan for mispresenting information is simply not enough to constitute possibly raising a disparagement claim when there is no specific allegation of any publication to a third party or anything that arguably could be construed as constituting some of the elements of the legal claim for disparagement. The district court correctly found that the original complaint "does not come close to triggering [Travelers'] duty to defend" because the passing reference to which Hillerich points is simply too cursory to constitute even potentially raising a covered claim. *Travelers Prop. Cas. Co., et al. v. Hillerich & Bradsby Co., Inc.*, 2007 WL 1231560, at *3 (W.D. Ky. 2007).

The district court relied solely on one allegation in the First Amended Complaint that explicitly references Easton falsely disparaging the Baum Hitting Machine to find that Baum had alleged a claim of disparagement against Hillerich as a co-conspirator. That allegation in turn implicated Travelers' duty to defend Hillerich. The additional allegations about Easton distributing false information about tests performed with the Baum Hitting Machine further support the conclusion that Baum was potentially alleging a claim of disparagement against Easton, and therefore Hillerich, that was tied to the overall conspiracy to commit tortious interference with prospective advantage. Therefore, the district court correctly found that the First Amended Complaint triggered Travelers' duty to defend.

Hillerich's argument that the date of the filing of the First Amended Complaint was December 4, 1998 rather than November 8, 1999 is without merit. Hillerich cites no authority for the proposition that a draft complaint attached as an exhibit to a motion for reconsideration should be considered filed as a complaint on that day. Since the First Amended Complaint was not docketed until November 8, 1999, and therefore did not give rise to any obligation on the part of Hillerich to answer the complaint until that time, the

district court was correct in determining that Travelers' duty to defend was triggered on November 8, 1999.

### D.     Damages and Pre-judgment Interest Awarded

### 1.     Calculation of Damages Owed to Hillerich

Travelers appeals the district court's determination that it owed a duty to defend from the filing of the First Amended Complaint rather than from the date of tender by Hillerich or the date that Travelers learned of the filing of the complaint. Travelers also appeals the district court's implicit ruling that the defense costs Hillerich alleged were reasonable, claiming that there was an issue of material fact presented as to the reasonableness of the costs that the district court failed to address.

The district court ruled that Travelers owed defense costs to Hillerich beginning on the date of filing of the First Amended Complaint in the *Baum* litigation. In the previous section, we concluded that the district court properly determined that Travelers' duty to defend was triggered on November 8, 1999 with the docketing of the First Amended Complaint.

Kentucky law places the burden on the insurer to bring forward proof that it has been prejudiced by any delay in notification of a claim by the insured. *See Jones v. Bituminous Cas.*, 821 S.W. 2d 798, 801-03 (Ky. 1991). On the other hand, the majority of other jurisdictions do not allow recovery for pre-tender costs because those are deemed waived by the insured, especially when an insurance contract prohibits voluntary payments without the consent of the insurer, and so no showing of prejudice is required on the part of the insurer. *See Buss v. Superior Court*, 939 P.2d 766, 773 (Cal. 1997); *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 304 (Okla. 1996); *Towne Realty, Inc. v. Zurich Ins. Co.*, 548 N.W.2d 64, 68 (Wis. 1996); *Scottsdale Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*, 791 F. Supp. 1079, 1084 (D. Md. 1992); *O'Brien Family Trust v. Glen Falls Ins. Co.*, 461 S.E.2d 311, 313 (Ga. App. 1995).

The cases that Travelers invokes to support its view that pre-tender defense costs will not be charged to the insurance company argue that the insured must at least implicitly make

a coverage claim by advising the insurer that it had been sued, and mere knowledge on the part of the insurer that the insured is involved in litigation is not sufficient for tender. *See C.J. Duffey Paper Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 177, 178 (8th Cir. 1996) (interpreting Minnesota law); *Fireman's Fund Ins. Co. v. Ex-Cell-O Corp.*, 790 F. Supp. 1318, 1329 (E.D. Mich 1992). Kentucky's general pronouncement on late notice is very persuasive authority that Kentucky would continue to place the burden on the insurer to show prejudice due to late notice rather than assuming prejudice as many other jurisdictions have for pre-tender defense costs, but the issue need not be resolved since Hillerich did effectively tender the claim to Travelers before its duty to defend arose.

Travelers argues that Hillerich's March 19, 1999 communication regarding the *Baum* litigation was insufficient to constitute tender of the claim to Travelers because it merely included the draft First Amended Complaint that Baum had attached as an exhibit to its motion for reconsideration on December 4, 1998. Therefore, Travelers contends that tender did not occur until December 22, 2000 when Hillerich gave Travelers the filed version of Baum's First Amended Complaint. Travelers argues in the alternative that it should not be held to have notice of the filing of the First Amended Complaint until March 16, 2000 when it is clear that Travelers had seen the underlying docket which references a November 8, 1999 complaint filing date.

However, Travelers fails to address the fact that Hillerich is separately arguing that the December 1998 draft version of the First Amended Complaint was the actual complaint (the relevant language regarding disparagement is identical in the draft and filed versions), and it did tender that version to Travelers before November 8, 1999. Hillerich's argument fails on the merits as discussed above. However, Hillerich had given notice to Travelers of the claim, even if that notice was ultimately defective because this Court finds that this version of the complaint was merely a draft, not the filed complaint. Hillerich also tendered the filed version of the complaint to Travelers in its communication to Travelers disputing the denial of coverage, which constructively kept Travelers abreast of the development of the litigation. Additionally, it is clear from the record that Travelers undertook an investigation into the *Baum* litigation that at least brought the November 1999 complaint to the attention of Travelers by March 2000. However, Travelers did not timely respond to

Hillerich regarding its view of the tendered draft complaint, received in March 1999, until September 2000. Hillerich is still arguing that the December 1998 draft complaint is sufficient, so it appears from the record that Hillerich constructively tendered the claim to Travelers in its March 1999 tendering of the draft complaint, well in advance of the November 1999 filing that actually triggered Travelers' duty to defend. Therefore, Travelers would owe damages from the filing of the November 8, 1999 First Amended Complaint.

Travelers did not raise the issue of the reasonableness of Hillerich's claimed damages for Travelers' breach of the duty to defend in its Motion for Entry of Damages and Final Judgment. This argument was not raised until Travelers' reply to Hillerich's response to that motion. Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court, and so are also not properly preserved for appeal. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-54 (6th Cir. 2008). Therefore, Travelers waived its right to contest the reasonableness of the defense costs owed to Hillerich. Only the arguments about the proper date on which Travelers' duty to defend arose were properly preserved before the district court and this Court.

### 2. Pre-Judgment Interest for Travelers

Under Kentucky law, courts have discretion to award either simple or compound pre-judgment interest, though the default is simple interest. *See Reliable Mech.*, 125 S.W.3d at 858. Principles of equity are used in order to determine whether compound interest is appropriate in a particular case, which might include unreasonable delay. *Id.* at 857.

Travelers argues that it should have been awarded compound pre-judgment interest because Hillerich knew of the amount in controversy and refused to pay under threat of filing suit for bad faith against Travelers. Travelers points to several Kentucky cases awarding compound interest in situations where there was a significant delay in payment of liquidated damages. *See Thomas & Betts Corp., Inc. v. A & A Mech., Inc.*, 2008 WL 2696877, at *4 (Ky. Ct. App. 2008); *Clay v. K. Petroleum, Inc.*, 2008 WL 2308118, at *9 (E.D. Ky. 2008); *Leasure v. Coleman Am. Co.*, 2008 WL 2065235, at *3 (Ky. Ct. App. 2008) (appellate court awarding compound pre-judgment interest when trial court denied pre-judgment interest on liquidated damages). However, Travelers does not point to authority, and this Court has

found none, where a trial court's award of simple interest was found to be an abuse of discretion.  Since Hillerich refused to pay the $500,000 in settlement costs because it believed that its insurance coverage should include the costs of settlement, it was not an abuse of discretion for the district court to weigh the equities and find that simple pre-judgment interest was sufficient to make Travelers whole.

### 3.    Pre-Judgment Interest for Hillerich

Pre-judgment interest must be awarded as a matter of law to prevailing parties when the damages are liquidated.  Damages are liquidated when the amount in question is either agreed upon by the parties or is fixed by operation of law or the parties.  *See Nucor Corp. v. General Elec., Co.*, 812 S.W.2d 136, 141 (Ky. 1991).  If damages are unliquidated, the court has discretion whether to award pre-judgment interest.  *See Hale v. Life Ins. Co. of N. Am.*, 795 F.2d 22, 24 (6th Cir. 1986).

The district court did not award pre-judgment interest to Hillerich because it determined that the attorney's fees and other defense costs were not liquidated.  Hillerich argues the damages were liquidated because the fees were due on an open account, and an amount due on an open account has been considered liquidated under Kentucky law.  *See Poundstone v. Patriot Coal Co., Ltd.*, 485 F.3d 891, 903 (6th Cir. 2007).  Travelers argues that because the amounts were uncertain at the time of the breach and not readily calculable from market rates, the damages were unliquidated.  *See 3D Enterprises Contracting Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005).

The district court correctly concluded that the key issue is whether the amount is fixed as between the parties to the litigation either by agreement or operation of law. Travelers was not privy to the amounts Hillerich owed on its open account with its defense counsel prior to Travelers taking on the defense costs after the Second Amended Complaint was filed.  Hillerich has offered no proof that Travelers knew or should have known of those amounts due, and so as between Travelers and Hillerich, the damages were not liquidated. Therefore, it was entirely within the district court's discretion whether to award pre-judgment interest, *see Poundstone*, 485 F.3d at 903, and we find no abuse of discretion in the decision to deny such interest.

### 4.       Proper Damages and Interest Awarded to Both Parties

Hillerich tendered to Travelers what it still contends was the First Amended Complaint on March 19, 1999. While that version was a draft version attached as an exhibit to Baum's Motion for Reconsideration, it was sufficient to constitute constructive tender of the suit to Travelers such that Travelers owes damages from its breach of the duty to defend from the November 8, 1999 filing of the First Amended Complaint. Travelers waived its arguments regarding the reasonableness of Hillerich's defense costs by not raising the arguments in its original pleading demanding entry of a final order and awarding of damages. The district court did not abuse its discretion in awarding simple pre-judgment interest to Travelers and in denying pre-judgment interest to Hillerich.

### III.

For the reasons set forth in this opinion, we **AFFIRM** the district court's orders in their entirety.