**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2596
_____

CEDRIC PAIGE

v.

CITY OF NEW BRUNSWICK;
NEW BRUNSWICK POLICE DEPARTMENT;
PETER MANGARELLA, Individually and in his capacity as Police
Director for the New Brunswick Police Department;
OFFICER DEAN DAKIN, Individually and in his capacity as
an Officer for the New Brunswick Police Department;
OFFICER PATRICK M. EVANS, Individually and in his
capacity as an Officer for the New Brunswick Police
Department; OFFICER RONALDO RODRIGUEZ,
Individually and in his capacity as an Officer for the New Brunswick
Police Department; OFFICER DANIEL WILLIAMS, Individually and
in his capacity as an Officer for the New Brunswick Police Department;
OFFICER DAVID BOSCO, Individually and in his capacity as an
Officer for the New Brunswick Police Department;
OFFICER MICHAEL PHOMMATHEP, Individually and in his
capacity as an Officer for the New Brunswick Police Department

Officer Dean Dakin, Officer Patrick M. Evans,
Officer Ronaldo Rodriguez, and Officer Daniel Williams,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-13-cv-02298)
District Judge: Honorable Michael A. Shipp
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 7, 2016

_____

Before: JORDAN, VANASKIE, and NYGAARD, *Circuit Judges*.

(Opinion Filed:  February 21, 2017)
_____

OPINION*
_____

VANASKIE, *Circuit Judge*.

Appellants, New Brunswick, New Jersey Police Officers Dean Dakin, Patrick Evans, Daniel Williams, and Ronaldo Rodriguez, appeal an order of the District Court denying their motions for summary judgment with respect to Appellee Cedric Paige's claims under 42 U.S.C. § 1983 and New Jersey law.  The officers argue that the District Court erred by denying their motions for summary judgment on the basis of qualified immunity.  We conclude that we lack jurisdiction to consider this interlocutory appeal because the officers do not raise pure questions of law.[1]  Accordingly, we will dismiss the officers' appeal.

## I.

On April 14, 2011, Officers Dean Dakin and Patrick Evans saw Cedric Paige in Feaster Park in New Brunswick, New Jersey and detected the smell of "burnt marijuana." Officers Dakin and Evans recognized Paige from an alert sent by the Middlesex County

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a).

2

Prosecutor's Office, which indicated that Paige may be in possession of a machine pistol and that he was a member of the "Sex, Money, Murder" sect of the Bloods gang. Based on the smell of marijuana and the alert, Officers Dakin and Evans approached Paige to perform an investigatory stop. When Paige saw the officers, he fled the park on a bicycle. Officer Evans drove the patrol car parallel to Paige, who was riding the bicycle on the sidewalk. According to Paige, the officers never told him to stop and one of the officers said to him "we're going to catch you with a gun" and "we're going to get you." (App. 67–68.)

Dispatch requested that Officers Daniel Williams and Ronaldo Rodriguez assist in the chase. After responding to the park area, Officers Williams and Rodriguez observed Paige riding the bicycle down the sidewalk at a high rate of speed. Paige asserts that Officers Williams and Rodriguez deliberately drove their patrol car into him, causing him to fall off the bicycle and sustain injuries.[2] The front dashboard camera on the patrol car captured the collision between Paige and the police cruiser.

Paige alleges that after being knocked off the bicycle, Officers Williams, Rodriguez, Dakin, and Evans assaulted him. The officers deny this claim, and there is no video recording that captures the post-collision events.

---

[2] Officers Williams and Rodriguez claim that they did not deliberately drive their patrol car into Paige. They maintain that they merely parked their patrol car at the entrance to a residential parking lot ahead of Paige, perpendicular to the sidewalk, in order to block his path. They assert that Paige then rode his bicycle into the front of the patrol car, which caused him to fall off the bicycle.

3

It is, however, undisputed that the police summoned emergency medical services to the scene. It is also undisputed that Officer Dakin searched Paige at the scene and found a bag of marijuana. Paige ultimately pleaded guilty to possession of a controlled dangerous substance.

On April 11, 2013, Paige filed a Complaint in the United States District Court for the District of New Jersey, stating claims of (1) excessive force, pursuant to 42 U.S.C. § 1983, (2) assault and battery under New Jersey law, and (3) violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1-2.[3] With respect to the excessive force claim, Paige argued that he was unreasonably seized when the officers deliberately and intentionally struck him with the patrol car. The officers argued that there was no seizure because they contend that the video evidence clearly shows Paige caused the accident.[4]

---

[3] Paige also asserted claims for false arrest/imprisonment, malicious abuse of process, malicious prosecution, supervisor liability, and inadequate training. On summary judgment, however, Paige conceded that he could not maintain a cause of action on these claims.

[4] The officers first challenged Paige's claim that he was assaulted by them after the collision in their reply brief filed in support of their summary judgment motion, asserting that a video recording from a camera mounted in the rear of the police car refuted Paige's account. Because their challenge to this aspect of the excessive force claim was not raised until the officers filed their reply brief, the District Court declined to consider it. *See MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C.Cir.2010) (explaining that "district courts, like this court, generally deem arguments made only in reply briefs to be forfeited" (internal quotation marks omitted)). We likewise will not address this aspect of the excessive force claim. *See Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir.2010) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court, and so are also not properly preserved for appeal."). We

Additionally, the officers argued that, even if there was a seizure, they are entitled to qualified immunity.

Central to this appeal is the video evidence of the incident. The District Court found that "[e]ven though the recording captured the collision, a reasonable jury could find that the video recording of the incident supports either story: an intentional and deliberate strike or an accidental crash." (App. 9.) Based on this finding, the District Court found that, viewing the facts in the light most favorable to Paige, a reasonable jury could find that the officers intentionally ran into Paige with their patrol vehicle, conduct that would not be shielded from liability under the qualified immunity doctrine. This same factual dispute, the District Court explained, foreclosed summary adjudication of Paige's New Jersey state law claims. The officers timely filed this appeal.[5]

## II.

Generally, we only have jurisdiction to hear appeals from "final decisions of the district courts." 28 U.S.C. § 1291. In some circumstances we have jurisdiction to hear "interlocutory appeals—appeals before the end of district court proceedings"—but the Supreme Court has made it clear that such appeals "are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). As it pertains to this case, "[i]t is well

note, however, that the recording from the rear seat camera is inconclusive and that there are competing accounts of what in fact occurred after the collision.

[5] The District Court's resolution of the state law claims is not before us on this appeal.

5

established that an order denying summary judgment on qualified immunity grounds may qualify as an appealable final decision under the collateral order doctrine." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526–30 (1985)).[6] "However, appellate jurisdiction exists only 'to the extent that [the order] turns on an issue of law.'" *Id.* (quoting *Forsyth*, 472 U.S. at 530). If the order turns on a factual dispute then we lack jurisdiction over the ensuing appeal. *See Johnson*, 515 U.S. at 319–20 (declining appellate review of a district court's determination of whether a dispute of fact is "genuine"); *Montanez v. Thompson*, 603 F.3d 243, 249 (3d Cir. 2010) (noting that "an appeals court cannot review whether the district court erred in denying a qualified immunity motion because the judge was mistaken as to the facts that are subject to genuine dispute"); *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002) (holding that "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove"). Thus, our jurisdiction to review the District Court's order denying summary judgment depends on whether "the . . . appeal raises pure questions of law or whether it challenges the District Court's determination of which facts were sufficiently supported by evidence." *Blaylock*, 504 F.3d at 409.

---

[6] "Under the collateral order doctrine, an interlocutory order of a district court may be treated as a 'final decision' if it: '(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment.'" *Blaylock v. City of Phila.*, 504 F.3d 405, 408 (3d Cir. 2007) (quoting *Johnson,* 515 U.S. at 310).

Often times, qualified immunity is amenable to summary judgment practice because it turns on the question of whether the asserted constitutional right was so "clearly established . . . that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[7] *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). If the right in question was not clearly established at the time of the incident, then the defendant is entitled to qualified immunity regardless of whether the conduct in question did in fact amount to a violation of the asserted right. "Whether a right is clearly established is a question of law, appropriate for our review under the collateral order doctrine." *Dougherty*, 772 F.3d at 993. In this regard, we have explained that a District Court "may not deny a summary judgment motion premised on qualified immunity without deciding that the right in question was clearly established at the time of the alleged wrongdoing." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 533, 637 n.4 (3d Cir. 2015) (citation omitted).

Here, the District Court did determine this aspect of the qualified immunity inquiry. First, the District Court correctly observed that Paige's excessive force claim is governed by Fourth Amendment jurisprudence, and that the threshold issue under the

---

[7] There are two parts to the qualified immunity inquiry. One part concerns whether the facts presented by the plaintiff are sufficient to "make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The other part is "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Id.* (internal quotation marks omitted).

Fourth Amendment is whether there was a "seizure" of the plaintiff. *See Graham v. Connor,* 490 U.S. 386, 394-95 (1989). The District Court then ruled that it was clearly established at the time of the incident that "[a] seizure occurs when a person is 'stopped by the very instrumentality set in motion or put in place in order to achieve that result.'" (App. 7 (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989)). In *Brower,* involving a police roadblock, the Court ruled that there is a "seizure" of a person for Fourth Amendment purposes "when there is a governmental termination of freedom of movement through means intentionally applied." *Id.* at 597. The key question in this case, therefore, is whether the facts show a deliberate use of the vehicle to hit Paige on his bicycle, thereby effectuating a seizure of his person. The District Court, reviewing the video evidence in this case, determined that "a reasonable jury could find that the video recording of the incident supports either story: an intentional and deliberate strike or an accidental crash." (App. 9.)

On appeal, the officers' repeatedly assert that the District Court erred in concluding that there is a genuine factual dispute concerning whether the officers deliberately hit Paige with the patrol vehicle and, thus, violated his constitutional rights. Specifically, the officers argue that the video makes it clear that they did not intentionally hit Paige with the patrol car and, thus, never seized Paige. (*See* Appellants' Br. at 16 ("The issue at bar is whether qualified immunity applies to the Defendant Officers as a matter of law *when undisputed video evidence of the events removes any issue of fact.*" (Emphasis added).) After reviewing the video ourselves, we find that the District Court

8

did not err in finding the video evidence is inconclusive. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (explaining that courts should "view[] the facts in the light depicted by the videotape," but only when the nonmoving party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him"). Here, the videotape can be viewed either as the officers deliberately striking Paige, or as Paige running into the vehicle. Under these circumstances, a jury must resolve the competing accounts of the incident.

The officers alternatively contend that, even if their actions did constitute a seizure, it was not an unreasonable seizure under the Fourth Amendment and, thus, there was no constitutional violation. The reasonableness of the seizure, however, turns on an objective assessment of all the facts and circumstances of this case. *See Graham*, 490 U.S. at 396. While some of the facts are undisputed, such as the reason the police suspected Paige of criminal conduct and his flight, other facts essential to determining the reasonableness of the police action are disputed. For example, whether they deliberately rammed the bicycle with their cruiser, or simply attempted to block Paige's flight, is a hotly contested matter. The officers do not contend that the circumstances warranted such deliberate use of force. Because the officers' appeal turns solely on a factual dispute that cannot be resolved on summary judgment, we do not have jurisdiction to consider the officers' appeal. *Cf. Barton v. Curtis*, 497 F.3d 331, 336 (3d Cir. 2007) ("Because the District Court denied summary judgment on the ground that there is a material issue of fact to be determined by the jury, the order . . . is one of the limited instances in which

9

this Court does not have jurisdiction to hear an appeal of summary judgment in a 42 U.S.C. § 1983 cause of action where the defendant is asserting qualified immunity.").

## III.

For the reasons discussed, we will dismiss this appeal for lack of jurisdiction.