NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0599n.06

No. 10-3419

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Aug 22, 2011*

LEONARD GREEN, Clerk

JEFF WALBURN, KAREN SUE WALBURN,

    Plaintiffs-Appellants,

       v.

LOCKHEED MARTIN UTILITY SERVICES, INC.,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Southern District of Ohio at
Columbus

_____/

**Before:**     **BATCHELDER, Chief Circuit Judge; GUY and MOORE, Circuit Judges**

    **RALPH B. GUY, JR., Circuit Judge.**    Plaintiffs Jeff Walburn and his wife Karen Sue Walburn appeal from the order dismissing this action against the defendant Lockheed Martin Utility Services, Inc. (LMUS). Without contesting the dismissal of other claims, plaintiffs urge us to find error in the district court's refusal to preclude LMUS from asserting the statute of limitations as a defense to the state-law intentional tort claim arising out of Jeff Walburn's prior employment at the gaseous uranium diffusion plant operated by LMUS. Plaintiffs sought this relief on the basis of LMUS's failure to produce five specific documents during discovery in plaintiffs' earlier filed action, which allegedly led to the voluntary dismissal of the earlier case without prejudice. For the reasons that follow, we

affirm the judgment in favor of LMUS.[1]

**I.**

In this action, filed in April 2009, plaintiffs reassert essentially the same five claims

that plaintiffs brought in the initial action filed against LMUS almost 13 years earlier in July

1996.[2]  The district court succinctly summarized the allegations in this case as follows:

> Plaintiff Jeff Walburn alleges that he "was continually employed as a security
> inspector" at that plant "from 1976 through 2008."  Doc. 2, ¶ 13.  In this
> position he allegedly was required "to work in and around processes that
> potentially expose[d] him to radiation and various gasses" (Id., ¶ 14), in
> connection with which he and certain other employees were required to submit
> to periodic urinalysis and dosimeter badge monitoring. Id., ¶¶ 14, 17-20. Jeff
> Walburn alleges that "Defendant altered and/or destroyed . . . thousands of
> dosimeter records [including his] as a part of its regular policy and procedure"
> which has resulted in suspect and untrustworthy records.  Id., ¶¶ 21-22.
> Further, he alleges that he suffered permanent injuries ultimately requiring
> hospitalization as the result of exposure to certain gasses during a particular
> work assignment on July 26, 1994, after which incident he had received an
> "inadequate examination" by Defendant and was returned to work. Id., ¶¶ 24-
> 30, 32.    Finally, Plaintiffs allege that Defendant's records of this
> hospitalization episode have been altered. Id., ¶ 31.

Plaintiff alleged that the exposure resulted in a "permanent breathing disorder."  Claims for

breach of contract, violation of federal law, and punitive damages were brought on behalf

of plaintiff and other similarly situated employees.  Plaintiffs' two non-class claims were for

intentional tort and loss of consortium.  Presumably in anticipation of the statute-of-

limitations defense, plaintiffs' complaint asserted equitable estoppel and alleged that the first

---

[1]For ease of reference, Jeff Walburn will be referred to as "plaintiff."

[2]Plaintiff also filed a *qui tam* action, which is not pertinent to the issues in this case. *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005) (affirming dismissal of *qui tam* action based on allegations and transactions publicly disclosed in the 1996 action).

action would not have been dismissed voluntarily if certain subsequently discovered documents had been produced in discovery. Defendant did not file an answer, but moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).

Factually, plaintiffs asserted as the sole basis for avoiding dismissal of the admittedly tardy claims the following response to one of the requests for production of documents made in the first case:

REQUEST TO PRODUCE NO. 5

Produce any and all notices, internal memorandums, written communications or other written materials that discuss the potential exposure to security personnel at the uranium gaseous diffusion plant near Piketon, Ohio to any of the materials used to shoot a cell.

RESPONSE: With the exception of those materials contained within Exhibits A and B, LMUS is aware of no such documents.

Defendant produced some materials, including documents relating to plaintiff's own exposure on July 26, 1994, but denied being aware of other documents discussing the potential for exposure to security personnel at the plant. The district court accepted plaintiffs' averment that they would not have voluntarily abandoned their earlier lawsuit if LMUS had produced the five documents that plaintiffs later obtained from other sources.

Those five documents, attached to plaintiffs' response to the motion to dismiss, all predated LMUS's operation of the plant beginning in July 1993. Briefly, Exhibit 1 purported to be a safety report dated December 17, 1980, about an incident in which the internal pressure of a cell was found to be "above atmosphere" and created a potential risk of exposure to workers issued permits to clean the cell housing. It recommended that the status

of the equipment be checked before permits were issued. Exhibit 2 was a memo dated September 13, 1989, that instructed foremen to notify the security supervisor before starting a job in "Area 6" involving a "contamination control boundary." Exhibit 3 was a consultant's draft report dated April 5, 1990, that included discussions about cell maintenance, low inventory of spare seals to repair seal compressor failures, and instances of employees circumventing compressor seal alarms. Exhibit 4, dated December 8, 1992, reported an increase in positive bioassay samples for Building X-326 during June 1992, which was the same building where plaintiff was exposed two years later, and made recommendations for actions to be taken in response. Exhibit 5, dated March 5, 1993, was a special air sampling report investigating positive bioassay samples from Building X-326 in 1992, and indicating that corrective action was taken to lower the pressure in the cells. Plaintiff, it is alleged, was injured when air pressure in some cells rose "above atmosphere" and gasses were released.

While the motion to dismiss was pending in this case, plaintiffs also sought relief from judgment in the earlier action pursuant to Fed. R. Civ. P. 60(b) and (d), and moved to consolidate the previously dismissed action with this case. The district judge—who presided over both the 1996 and 2009 cases—acted first on the motion for relief from judgment, which was based on the alleged failure to produce the same five documents as the claim for equitable estoppel in this case. The district court denied that motion in January 2010, and plaintiffs did not appeal from that order.[3]

---

[3]The district court found that although failure to produce material requested in discovery may constitute misconduct under Rule 60(b)(3), relief on such grounds must be requested no more than a year

The defendant's motion to dismiss was granted in March 2010. The district court found, *inter alia*, (1) that the breach of contract claim was barred by the exclusive-remedy provision of the Ohio Workers' Compensation Act; and (2) that the federal statutes and regulations relied upon did not provide for a private right of action for violation of federal law. Plaintiffs did not argue otherwise in the district court or dispute these conclusions on appeal. Plaintiffs also do not challenge the district court's determination that the claims for loss of consortium and punitive damages rise and fall with the intentional tort claim.

As the district court found, Ohio law recognizes a common law intentional tort claim against an employer that is not barred by the workers' compensation exclusive-remedy provision. *See Blankenship v. Cincinnati Milacron Chems., Inc.*, 433 N.E.2d 572, 576 (Ohio 1982). Intentional tort claims arising prior to April 7, 2005—the effective date of Ohio Rev. Code § 2745.01—are governed by the common-law standard for establishing an employer's intent articulated in *Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108, 1112 (Ohio 1991) (requiring knowledge that harm will be a "substantial certainty").[4] Because the claim in this case was admittedly identical to the intentional tort claim asserted in the 1996 action, however,

---

after entry of the judgment. *See Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996); FED. R. CIV. P. 60(c)(1). Nor could plaintiffs rely on the catch-all provision in Rule 60(b)(6) since the conduct in question was addressed by Rule 60(b)(3). *See Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001). The district court also rejected plaintiffs' reliance on Rule 60(d), finding there was no "fraud on the court" or other egregious conduct that might otherwise warrant relief under Rule 60(b) or (d). *See Apotex Corp. v. Merck & Co.*, 507 F.3d 1357, 1360-61 (Fed. Cir. 2007) (discussing "fraud on the court" under former Rule 60(b)).

[4]In upholding § 2745.01, the Ohio Supreme Court recently explained that the legislature intended to modify the definition of a common-law intentional tort so as to curtail the availability of damages absent specific intent to cause an injury. *See Kaminski v. Metal & Wire Prods. Co.*, 927 N.E.2d 1066, 1079-80 (Ohio 2010); *Stetter v. R.J. Corman Derailment Servs., LLC*, 927 N.E.2d 1092, 1106 (Ohio 2010).

plaintiffs conceded that it (and the derivative claims) would be completely barred by the applicable Ohio statute of limitations unless LMUS were estopped from asserting the defense. Plaintiffs relied on federal case law applying equitable estoppel, but the district court determined that it would be "more appropriate to consult and apply Ohio authority, if possible, in deciding the issue presented by this claim." Then, looking to Ohio law, the district court concluded that the allegedly inadequate discovery response could not satisfy the requirements for equitable estoppel in the statute-of-limitations context. The defendant's motion to dismiss was granted, and judgment was entered accordingly. This appeal followed.

## II.

To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The statute of limitation, although an affirmative defense, may be the basis for dismissal under Rule 12(b)(6) when the facts are definitively ascertainable from the pleadings and conclusively establish the affirmative defense. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). The district court's decision granting the motion to dismiss is reviewed *de novo*. *Id*. at 608-09.[5]

---

[5]Although plaintiffs assert for the first time in their reply brief that the motion should have been treated as one for summary judgment, the district court did not err by considering the exhibits plaintiffs submitted in opposition to the motion to dismiss as they were referred to in the complaint and were central to the claims asserted in the complaint. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The district court properly recognized that plaintiff's state-law intentional tort claim is governed by Ohio's two-year statute of limitations. *See Funk v. Rent-All Mart, Inc.*, 742 N.E.2d 127, 129-30 (Ohio 2001); *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 594 (6th Cir. 1999) (state statute of limitation applies to state law cause of action). Ohio law also recognizes that equitable estoppel may be employed to prevent a defendant from asserting a limitations defense. *See Doe v. Archdiocese of Cincinnati*, 880 N.E.2d 892, 894-95 (Ohio 2008); *Twee Jonge Gezellen, Ltd. v. Owens-Illinois, Inc.*, 238 F. App'x 159, 163 (6th Cir. 2007). The party relying on equitable estoppel bears the burden to establish that the requirements for equitable estoppel have been met.

Plaintiffs devoted a considerable portion of their opening brief to the contention that the district court should have applied federal law in evaluating their claim for equitable estoppel, but retreated from that position at oral argument and conceded that state law controls. We find that the district court did not err in concluding that state law should govern the application of equitable estoppel to avoid the statute of limitations on the state-law intentional tort claim. *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751-52 (1980); *see also Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006).

The task of the federal court is to apply Ohio law "'in accordance with the then controlling decision of the highest state court.'" *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987) (citations omitted). If the highest state court has not decided the applicable law, the federal court "must make its best prediction as to how

the highest state court would resolve the issues presented." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 264 (6th Cir. 2010). Further, "'an intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 252 (6th Cir. 2011) (citation omitted).

The Ohio Supreme Court explained the general principles of equitable estoppel recognized in Ohio as follows:

> The concept of estoppel is little changed since the mid-19th century, when we stated, "As a general rule, a party will be concluded from denying his own acts or omissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." *McAfferty v. Conover's Lessee* (1857), 7 Ohio St. 99, 105, 1897 WL 15. In *Russell v. Fourth Natl Bank* (1921), 102 Ohio St. 248, 269-270, 131 N.E.726, we stated, "An estoppel arises when one is concerned in or does an act which in equity will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position." More recently, we stated, "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188. Implicit in each of these definitions is the principle that "[t]he purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630.

*Doe*, 880 N.E.2d at 894-95. Generally, to invoke the doctrine of equitable estoppel, a party must demonstrate "(1) a factual misrepresentation, (2) that the misrepresentation is misleading, (3) that the misrepresentation induced actual reliance that was reasonable and

in good faith, and (4) that it caused detriment to the relying party." *Hoeppner v. Jess Howard Elec. Co.*, 780 N.E.2d 290, 297 (Ohio Ct. App. 2002) (citing *Romine v. Ohio State Hwy. Patrol*, 737 N.E.2d 586, 589-90 (Ohio Ct. App. 2000)). Plaintiffs argued that this showing could be made based on LMUS's alleged misrepresentation that it was not aware of other documents responsive to plaintiffs' discovery request. The district court found, however, that the Ohio courts have narrowed the kind of misrepresentation that will suffice to establish equitable estoppel in the statute-of-limitations context.

The Ohio Supreme Court, considering equitable estoppel in an action filed well outside the limitations period, explained that equitable estoppel would benefit the plaintiff "only if she has pleaded facts that, if proved, will demonstrate the efforts of the Archdiocese to prevent her from filing a lawsuit." *Doe*, 880 N.E.2d at 895. In that case, the statements that allegedly threatened and intimidated the plaintiff into giving up for adoption a child fathered by a priest, while aimed at concealing the paternity of the child, did not reflect or imply an effort to discourage the plaintiff from filing a lawsuit. *Id.*; *see also Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268, 279 (Ohio 2006). Dismissal on statute of limitations grounds was affirmed.

The Ohio Court of Appeals held in *Hoeppner*: "In order to apply the doctrine [of equitable estoppel] to the statute of limitations, a party must show that the misrepresentation 'was calculated to induce a plaintiff to forgo the right to sue.'" *Hoeppner*, 780 N.E.2d at 297 (citation omitted). Another Ohio court similarly explained that:

> in the context of a statute-of-limitations defense, a plaintiff must show either "an affirmative statement that the statutory period to bring an action was larger

than it actually was" or "promises to make a better settlement of the claim if plaintiff did not bring the threatened suit," or "similar representations or conduct" on defendant's part.

*Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484, 495 (Ohio Ct. App. 2000) (quoting *Cerney v. Norfolk & W. Ry. Co.*, 662 N.E.2d 827, 831 (Ohio Ct. App. 1995)).

We agree with the district court that these cases indicate that the Ohio courts have narrowed the kind of misrepresentation that must be alleged in order to invoke equitable estoppel to preclude a defendant from asserting a statute-of-limitations defense. Although those cases involved plaintiffs who delayed bringing suit, we cannot conclude that the Ohio courts would disregard this requirement when considering the issue in a refiled action. Indeed, the Ohio appellate courts have recognized that a defendant may be equitably estopped from invoking the statute of limitations in an action refiled after voluntary dismissal when the stipulation specifically provided that the case could be refiled. *See Hutchinson v. Wenzke*, 723 N.E.2d 176, 177-78 (Ohio Ct. App. 1999); *Romine v. Ohio State Hwy. Patrol*, 737 N.E.2d 586, 590 (Ohio Ct. App. 2000). Without the representation that the case could be refiled, equitable estoppel would not have been applicable.

Here, plaintiffs alleged that they made the determination, with the advice of counsel, to voluntarily dismiss the first action in the belief that they could not prevail on the merits of their presumably timely filed claims. We assume, as the district court did, that the discovery response was factually misleading to the extent that it suggested that no other responsive materials existed and that the absence of such evidence contributed to the plaintiffs' decision to voluntarily dismiss the earlier suit. However, the alleged

misrepresentation—that LMUS was unaware of documents discussing the potential exposure of security personnel—did not pertain to the limitations period, defendant's willingness to waive the defense, or an inducement for plaintiffs to abandon the presumably timely filed action. The district court did not err in concluding that the Ohio Supreme Court would not recognize the allegedly misleading discovery response as a misrepresentation that could be the basis for invoking equitable estoppel in the statute-of-limitations context.

**AFFIRMED**.[6]

---

[6]Plaintiffs argue that the district court had inherent power under Fed. R. Civ. P. 34 and 37 to apply estoppel in this case as a sanction for the defendant's failure to comply with discovery in the earlier case. While no authority is offered to support the imposition of sanctions in one case for alleged misconduct in another, we do not address this claim of error because it is raised for the first time on appeal.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I respectfully dissent because I believe that the Ohio Supreme Court would recognize Lockheed's allegedly misleading discovery response as a misrepresentation that could be the basis for invoking equitable estoppel in the statute-of-limitations context. The Ohio Supreme Court has stated that, "[e]quitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *Doe v. Archdiocese of Cincinnati*, 880 N.E.2d 892, 894-95 (Ohio 2008) (internal quotation marks omitted). The Walburns allege that Lockheed withheld relevant documents in discovery, falsely informing them that they were not aware of any responsive materials. As a result, the Walburns believed that they could not prevail on the merits and dismissed their first action. Thus, in accordance with Ohio law, the Walburns "ha[ve] pleaded facts that, if proved, will demonstrate [Lockheed's] efforts . . . to prevent" them from proceeding with their first lawsuit, and which should preclude Lockheed from asserting a statute-of-limitations defense to the Walburns' instant suit. *Id.* at 895. Otherwise, under the Walburns' view, Lockheed will have succeeded in preventing them from pursuing their legal claim by withholding documents in discovery.

The majority concludes that only a narrow subset of misrepresentations give rise to equitable estoppel under Ohio law—those that "pertain to the limitations period, defendant's willingness to waive the defense, or an inducement for plaintiffs to abandon the presumably timely filed action." Maj. Op. at 10. To the contrary, all that Ohio courts require is an allegation that, if proved, would establish that the defendant's acts were "designed to

prevent" a plaintiff from pursuing her legal claim. *Doe*, 880 N.E.2d at 895. It can reasonably be "infer[red] from the acts alleged in the complaint" that Lockheed "inten[ded] to prevent" the Walburns from proceeding with their suit. *Id.* Because the Walburns' complaint, construed in the light most favorable to them, alleges the kind of misrepresentation recognized by Ohio courts as a basis for equitable estoppel, it should survive the motion to dismiss.